UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GLORIA JARVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:03CV00985 AGF |
| ) | |
| ST. LOUIS CHAMBER & GROWTH ) | |
| ASSOCIATION, d/b/a RCGA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on Plaintiff's motion for an award of attorneys' fees and expert witness fees as the prevailing party on two of her three claims in Count III arising under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2612, et seq. Defendant has asserted that the Court should award no fees to Plaintiff, or should substantially reduce the fees to reflect the Plaintiff's relative lack of success.

## BACKGROUND

This case arises out of Plaintiff's employment with St. Louis Chamber & Growth Association (RCGA). Plaintiff filed her complaint in state court on December 30, 2002, asserting claims arising out of an alleged 1988 bonus agreement. Plaintiff asserted claims for breach of contract (Count I) and quantum meruit (Count II) based on allegations that during 1998 her immediate supervisor orally agreed to pay her an additional bonus of 25% of advertising revenues over a certain amount for that calendar year, which RCGA

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

thereafter refused to pay. Plaintiff claimed she was entitled to $39,600 plus interest at 9%.

On May 14, 2003, Plaintiff served a first amended petition in state court, reasserting Counts I and II, though seeking a slightly larger amount in damages, and also adding Count III under the FMLA. In Count III Plaintiff asserted that RCGA had refused to permit her FMLA leave to which she was entitled to care for her sick father. Plaintiff also asserted that RCGA had later granted her FMLA leave related to her own health condition, but demoted her and otherwise failed to pay commissions due her upon her return, in retaliation for having exercised her FMLA rights. The state court granted leave to file the amended complaint on July 1, 2003. On July 22, 2003, Defendant removed the case to federal court based on the federal question jurisdiction over the FMLA claims.

On January 5, 2004, while the case was pending in federal court, Plaintiff left the employ of Defendant. On June 7, 2004, this Court granted Plaintiff leave to amend her complaint to add a claim to Count III that she was constructively discharged for exercising her rights under the FMLA. The case proceeded on this amended complaint.

Prior to submitting the case to the jury, Plaintiff dismissed her quantum meruit claim in Count II. Plaintiff asked the jury to return a verdict of $59,597.35 for breach of contract in Count I. She requested $4,859.69 on her claim for the denial of FMLA leave, more than $16,000 on her claim for retaliation under the FMLA, and approximately $80,000 for back pay on her claim of constructive discharge. The issue of front pay was reserved for the Court following the jury's verdict on constructive discharge. Plaintiff

had advised the Court, however, that she was seeking approximately $1 million in front pay related to the constructive discharge.

After four days of testimony, the jury returned verdicts for Plaintiff on her claim for failure to grant FMLA leave, in the amount of $3,909.69, and on her claim of retaliation under the FMLA, in the amount of $11,789.06. The jury returned verdicts for Defendant on Plaintiff's claim in Count I for breach of contract and on Plaintiff's FMLA claim for constructive discharge in Count III. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), and without objection by Defendant, the Court awarded an additional amount as liquidated damages equal to the amount of damages awarded, for a total damage award of $31,397.50 on Plaintiff's claims for the denial of FMLA leave and retaliation.

Plaintiff initially requested $32,211.50 in attorneys' fees. Defendant RCGA asserted that the Court should exercise its discretion to deny Plaintiff's request for fees entirely based on Plaintiff's relative lack of success. Alternatively, Defendant urged the Court to deduct $2,058.50, attributable to Plaintiff's pursuit of the breach of contract claim, prior to asserting any FMLA claims. Defendant also asserted that the Court should award only 25% of the remaining amount, based on Plaintiff's limited success. In her reply brief, Plaintiff conceded that $2,058.50 of the fee amount and some small portion of the balance should be deducted, as attributable to the breach of contract claim. In her reply brief, Plaintiff also asserted that the fees of her expert witness, totaling $11,600, were also recoverable, and that she should also be entitled to recover at least half of that amount. Defendant made no separate response to Plaintiff's further claim for expert fees, which was first asserted in Plaintiff's reply brief.

# DISCUSSION

The FMLA provides for an award of attorneys' fees, expert fees, and costs to any prevailing plaintiff. 29 U.S.C. § 2617(a)(3) states: "The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." Although Defendant asserts that the Court should deny Plaintiff any award of fees based upon Plaintiff's lack of overall success, neither the facts nor the law justify such an approach. To be eligible for a fee award, a plaintiff need only prevail on "any significant issue in litigation which achieve[d] some of the benefit the parties sought." Texas State Teacher's Assn. v. Garland Indep. Sch. Dist, 489 U.S. 782, 791-92 (1989). As the Court noted in Garland, a plaintiff need not prevail on the central issue or even the primary relief sought.

> The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award under Hensley [v. Eckerhart, 461 U.S. 424 (1983)], not to the availability of the fee award vel non.

Id. at 792.

Although plaintiff did not prevail on the claim giving rise to the greatest damages and received less than the amount requested on her retaliation claim, Plaintiff did in fact succeed on two of her claims under the FMLA. And Congress believed claims under the FMLA to be of sufficient public importance that it provided for liquidated damages to be

added to any award of actual damages. As such, an award of attorney's fees and expert fees, in some amount, is appropriate.

The determination of the appropriate amount of fees that should be awarded is governed by the framework set forth in <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." <u>Fish v. St. Cloud State Univ.</u>, 295 F.3d 849, 851 (8th Cir. 2002) (citing <u>Hensley</u>, 461 U.S. at 433). The onus is on the party seeking the award to provide evidence of the hours worked and the rate claimed. <u>Hensley</u>, 461 U.S. at 433.

After obtaining that figure, other considerations may lead to an upward or downward adjustment, applying the factors outlined in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974). <u>See</u> <u>Hensley</u>, 461 U.S. at 434 n.9. The Supreme Court has directed, however, that "[t]he most critical factor in assessing fees is the degree of success obtained." <u>Fish</u>, 295 F.3d at 852 (the district court did not abuse its discretion in reducing the lodestar by 15% to reflect the lack of complete success) (citing <u>Hensley</u>, 461 U.S. at 436); <u>see also</u> <u>Wheeler v. Missouri Highway & Transp. Comm'n</u>, 348 F.3d 744, 754 (8th Cir. 2003) (the district court did not abuse its discretion where, after significantly reducing the hours reasonably expended and the hourly rate, it further reduced lodestar by two-thirds based on limited success). That is especially important where, as here, the plaintiff has succeeded on only some of her claims.

5

When a plaintiff's claims are based on different facts and theories and plaintiff prevails on some claims but not on others, no fees may be awarded for services on the unsuccessful claims. Hensley, 461 U.S. at 435. Where "the plaintiff's claims arise out of a common core of facts, and involve related legal theories," the most critical factor is the degree of success. Garland, 489 U.S. at 789. See Henlsey, 461 U.S. at 435; Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001) (success measured in terms of overall relief granted). If a plaintiff obtains excellent results, the attorney should recover a fully compensatory fee that normally will encompass all hours reasonably expended; if a plaintiff achieved only partial or limited success, an award based on all hours may be excessive. There is no precise formula for these determinations. A court may attempt to identify specific hours that should be eliminated, or simply reduce the award to account for the limited success. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 440. Again, the burden rests with the applicant to maintain billing records in a manner that will enable the court to identify distinct claims. Id. at 435-36.

Applying these principles to the case, Defendant has not asserted that any of the work performed was either unreasonable or duplicative. Nor has Defendant challenged the hourly rate requested. Although the only affidavit filed in support of the reasonableness of the hourly rate was that of Plaintiff's counsel, and no information regarding counsel's experience was provided, the Court takes judicial notice that Plaintiff's attorney has more than 25 years of experience as a litigator and finds counsel's

hourly rate of $210 per hour[2] to be reasonable. Thus, the Court will use as its starting point a lodestar of $32,211.50.

With regard to adjustments, Plaintiff concedes that she should not be able to recover fees attributable to her breach of contract claims in Counts I and II, as fees are not recoverable on such claims and Plaintiff did not, in any event, succeed on these claims. See Winter v. Cerro Gordo Cty. Conservation Bd., 925 F.2d 1069, 1074 (8th Cir. 1991). It is likewise clear that the claims based on the alleged 1998 bonus agreement were quite distinct from the FMLA claims. Inasmuch as Plaintiff initially filed only her contract claims, she concedes that the $2,058.50 in fees incurred prior to the amendment of the petition to assert the FMLA claims must be deducted. She also concedes that a portion of the fees incurred throughout the balance of the litigation related to the breach of contract claim must be deducted. She asserts, however, that the facts and documents relating to that claim were relatively simple and did not consume a great deal of time in discovery, and that any further reduction should therefore be small. Unfortunately, counsel did not maintain his fee records in a manner that permits the Court to determine which hours, following the filing of the amended petition, were expended on the breach of contract claims, and he makes no effort to do so now. While the Court agrees that the facts related to the breach of contract claim were relatively simple in comparison to the FMLA claims, it is also true that several witnesses at trial testified solely as to the alleged bonus agreement, and that most, if not all, of the discovery in the case – which

---

[2] The Court also notes that a few tasks were performed by others at a lesser rate, and those lesser rates are reflected in the amount of fees requested.

presumably related to all of the claims – was conducted well after the petition was amended. As such, in addition to the $2,058.50 incurred prior to the filing of the FMLA claims, the Court finds that the remaining fees should be reduced by 20% to account for legal services related to the breach of contract claims.

In addition, a further reduction is appropriate with respect to the fees attributable to the FMLA claims to reflect the limited degree of success. As set forth above, Plaintiff did not succeed on her constructive discharge claim. In terms of the relief requested, the damages for back pay and front pay[3] attributable to the constructive discharge claim far outstripped the damages attributable to Plaintiff's other FMLA claims. In addition, Plaintiff received less than she requested on her retaliation claim. On the other hand, Plaintiff received all of the damages she requested on her claim for the denial of FMLA leave, and the bulk of the damages requested on her retaliation claim, and by doing so, vindicated important rights created by Congress. Further, while the constructive discharge claim related to a slightly later point in time, much of the evidence related to Plaintiff's denial of leave and retaliation claims under the FMLA was equally applicable to her constructive discharge claim.

Based on a review of the record, and having observed the trial and the relative amounts of time expended on the claims, the Court finds that a further reduction of 40%

---

[3] Although the Court never reached the issue of front pay and evidence of plaintiff's entitlement to reinstatement or front pay was not presented to the jury, the Court notes that at the pretrial stage Plaintiff's counsel prepared the case as though the issue of front pay were to be presented to the jury and thus incurred both attorneys' fees and expert witness fees related to this claim prior to trial.

of the fees incurred after the petition was amended[4] is appropriate to account for Plaintiff's relative lack of success on her FMLA claims. Based on this reasoning, the Court will award Plaintiff $12,061.20 in attorneys' fees ($32,211.50 - 2,058.50 = $30,153 x 40% = $12,061.20).

With regard to the expert witness fees, the Court finds that the calculation is somewhat different. Again, Plaintiff has not provided any records from which the Court could determine which hours of expert time were attributable to the successful claims. It is evident from the pretrial discussions, however, that a significant portion of the expert fees were attributable to the back pay and front pay calculations related to the constructive discharge claim. Having observed the trial, the Court further notes that expert testimony was not necessary to establish the out-of-pocket expenses incurred for the denial of FMLA leave, and little, if any, expert assistance was necessary to calculate the commissions and salary lost as a result of the retaliation. In addition, an inordinate amount of time was spent with the expert both at trial and in preparing the damage calculations, attempting to boost the damages attributable to the breach of contract claim. While a complete denial of the expert fees is not appropriate in light of Plaintiff's partial success and the degree to which the FMLA claims were intertwined, the Court believes it would not be reasonable to award Plaintiff more than 20% of the expert witness fees. As such, Plaintiff will be awarded expert witness fees in the amount of $2,320.

---

[4] For reasons discussed below, a different percentage is used with respect to the expert witness fees.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for attorneys fees [Doc. #99] is **GRANTED** as follows: Plaintiff shall be awarded $12,061.20 in attorneys' fees and $2,320 for expert witness fees, for a total award of $14,381.20.

_____
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of June, 2005.